23-2156

IN THE

# United States Court of Appeals
# for the Fourth Circuit

Richmond, Virginia

| | | |
|---|---|---|
| **ANDREW U. D. STRAW**, | ) | |
| *Appellant-Plaintiff, Pro Se,* | ) | |
| | ) | |
| v. | ) | |
| | ) | **CAMP LEJEUNE JUSTICE ACT** |
| **UNITED STATES**, | ) | |
| Appellee-Defendant. | ) | **ORAL ARG. NOT REQUESTED** |

---

Appeal from the United States District Court for
the Eastern District of North Carolina, Southern Division
Case No. 7:23-cv-00162-BO-BM
The Honorable Judge Terrence W. Boyle

---

OPENING BRIEF OF
APPELLANT ANDREW U. D. STRAW

---

*s/ ANDREW U. D. STRAW*

s/ ANDREW U. D. STRAW
Putok Road, Apt. A
Población II
Bauan, Batangas 4201, The Philippines
Telephone: +63-966-752-1875 / 1-847-807-5237
andrew@andrewstraw.com

MAILING ADDRESS
(PREFERRED ADDRESS FOR US MAIL)
712 H ST NE, PMB 92403
Washington, D.C. 20002

SERVICE BY EMAIL (ENOTICE) PREFERRED

1

## Certificate of Interest

Appellate Court No.:        23-2156

Short Caption:        *Straw v. United States*

The undersigned Andrew U. D. Straw, Appellant, furnishes the following list in

compliance with Fed. R. App. P. 26.1:

(1) The full name of every party or amicus the attorney represents in the

case: Andrew U. D. Straw (*pro se*)

(2) If such party or amicus is a corporation: **N/A**

(i) Its parent corporation: **N/A**

(ii) A list of stockholders which are publicly held companies owning 10% or

more of the stock in the party or amicus: **N/A**

(iii) **N/A**

(3) The names of all law firms whose partners or associates have appeared for

the party in the case or are expected to appear for the party in this court:

Plaintiff-Appellant appears *pro se* and intends to continue to do so for his

case.

Pro Se Plaintiff/Appellant's Signature:

Pro Se Plaintiff/Appellant's Printed Name:        **Andrew U. D. Straw**

Date: **November 2, 2023**
Andrew U. D. Straw, Proceeding *Pro Se*
Telephone: (847) 807-5237
Email: andrew@andrewstraw.com
712 H ST NE, PMB 92403
Washington, D.C. 20002

2

# TABLE OF CONTENTS

| | | |
|---|---|---|
| Certificate of Interest | …………………………………… | 2 |
| Table of Contents | …………………………………… | 3 |
| Table of Authorities | …………………………………… | 3-5 |
| Jurisdiction Statement | …………………………………… | 6-7 |
| Issues for Review | …………………………………… | 8 |
| Statement of the Case | …………………………………… | 9 |
| A. Nature of the Case | …………………………………… | 9 |
| B. Course of the Proceedings | …………………………………… | 10 |
| C. Hearings | …………………………………… | 11 |
| D. Motions | …………………………………… | 12 |
| E. Appearances | …………………………………… | 12 |
| F. Trial | …………………………………… | 13 |
| G. Exhibits/evidence | …………………………………… | 13 |
| H. Disposition Below | …………………………………… | 14 |
| Standard of Review … | …………………………………… | 15 |
| Background & Argument | …………………………………… | 15 |
| Conclusion ………….. | …………………………………… | 23 |
| Verified Statement … | …………………………………… | 24 |
| R. 30(d) & FRAP Rule 32 Statements | …………………………………… | 25 |
| Proof of Service ……… | …………………………………… | 26 |

# TABLE OF AUTHORITIES

| | |
|---|---|
| *Camp Lejeune Water Litigation v. United States*, 7:23-cv-897 (E.D.N.C.) | 5, 8, 9, 10 |
| *Chang v. United States, 327 F.3d 911, 925 (9th Cir. 2003)*; *see also Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California, 618 F.3d 1066, 1084 (9th Cir. 2010)* | 17 |
| *In re: Andrew Straw*, 23-1120 (4th Cir. 2023) | 7 |
| *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 31 A.D. Cas. 546 (4th Cir. 2015) | 22 |

| | |
|---|---|
| *Jeff D. v. Otter*, 643 f.3d 278 (9th Cir. 2011) (citing *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004)). | 17 |
| *Koon v. United States*, 518 U.S. 81, 100 (1996); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1137 (9th Cir. 2011) (citing *Koon*); *Forest Grove School Dist. v. T.A.*, 523 F.3d 1078, 1085 (9th Cir. 2008) (applying *Koon*); *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002) (applying *Koon*). Thus, the court abuses its discretion by **erroneously interpreting a law**, *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1289 (9th Cir. 1994), or by resting its decision on an **inaccurate view of the law**, *Richard S. v. Dep't of Dev. Servs.*, 317 F.3d 1080, 1085-86 (9th Cir. 2003). *See also Fox v. Vice*, 131 S. Ct. 2205, 2211 (2011) (recognizing trial court has wide discretion "but **only when, it calls the game by the right rules**"). Record contains **no evidence to support district court's decision**. *See Oregon Natural Res. Council v. Marsh*, 52 F.3d 1485, 1492 (9th Cir. 1995). | 17 |
| *Straw v. LinkedIn*, 5:22-cv-7718-EJD (N.D. Cal. 2023) | 13 |
| *Straw v. U.S. Centers for Medicare Services*, 1:20-cv-01315 (D. MD) | 14 |
| *Straw v. U.S. Department of State*, 1:19-cv-02294 (D. MD) | 14 |
| *Straw v. Wilkie*, 20-2090, 843 F. App'x 263, **265-267** (Fed. Cir. 1/15/2021) | 15, 16, 18, 19 |
| *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 166 (2d Cir. 2001) (citing *SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79, 81 (2d Cir. 2000)). | 15 |
| Camp LeJeune Justice Act of 2022 Public Law 117-168, SEC. 804(b) | *passim* |
| 28 U.S.C. § 1915(d) | 6 |

| | |
|---|---|
| 28 U.S.C. § 1331 | 6 |
| 28 U.S.C. 1292(a)(1) | 6 |
| F.R.A.P. Rule 24 | 6 |
| FRCP Rule 65 | 2 |
| https://civilrights.org/resource/oppose-the-confirmation-of-terrence-boyle/?fbclid=IwAR0_wtQr5fU9F8J0qQ392DyC7diYmIek4dqIFJVZ-i0uBIvXi6s6-U-gqc4 | 22 |
| https://indyweek.com/news/archives-news/raleigh-federal-judge-rebuked-fourth-circuit-disabilty-discrimination-case/?fbclid=IwAR1UcTf5y99vDJYwq3ZH3fYeufbGXjBq9-jVj5dbZE79fxv2hRoudR6ev7Q | 21 |
| https://www.npr.org/2023/06/07/1180840816/four-judges-take-on-possibly-tens-of-thousands-of-lawsuits-over-camp-lejeune-wat | 21 |

**ATTACHMENT TO BRIEF**

**Attachment 1** - ORDER AND OPINION OF DENIAL, U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION.
FILED October 23, 2023, Dkt. 59.

NB: The URL links for docket entries I provide are mostly directed to a court document storage service that provides an easy way to access federal court documents for free, since PACER does not provide this service despite the massive fees that PACER.gov collects.

## I. JURISDICTIONAL STATEMENT

1. This appeal is taken from the order (Dkt. 59) of the U.S. District Court for the Eastern District of North Carolina, Southern Division, entered on **October 23, 2023**, denying leave to file a motion for injunctive relief to provide health care payments ($4,000 per month) and education payments ($2,400 per month) as immediate relief for "harm" done by the Camp LeJeune toxic water and discrimination on the basis of the disabilities that water caused in *Appellant* Straw. The complaint (Dkt. 55) and the motion for injunctive relief (Dkt. 56) invoked the Camp LeJeune Justice Act of 2022. My Dkt. 56 MOTION requesting relief in the form of these payments explained how I was exposed for 19 months, the injuries caused by the toxic water, and how the injunction would "relieve" that "harm" as required by SEC. 804(b). I had made a previous motion for similar relief (Dkt. 9) with my father's service record excerpt (Dkt. 9-1, **pages 2-3**) showing his being stationed at MCAS New River (part of Camp LeJeune for CLJA purposes), my Camp LeJeune Naval Hospital birthplace birth certificate (Dkt. 9-1, **page 1**), my USN medical records (Dkt. 9-1, pages **4-11**), and other confirming medical records (Dkt. 9-1, pages **12-19**) showing I have the **6 mental illnesses** that I claimed were caused by the PCE to which I was exposed. That Dkt. 9 MOTION was denied (7:23-cv-897, Dkt. 23, **p. 6**) **without prejudice** or reasons given with the right to file again on leave of the Court for good cause shown if it was focused on my individual case. The Dkt. 59 ORDER denied that Dkt. 56 motion for leave to file despite my having

provided ample grounds for the specific relief in my case. The Court of Appeals has jurisdiction to decide this interlocutory matter pursuant to 28 U.S.C. § 1292(a)(1). The District Court had jurisdiction under 28 U.S.C. § 1331 & SEC. 804(b) of the Camp LeJeune Justice Act of 2022 as well as the authority to issue temporary and permanent restraining orders under FRCP Rule 65. The deemed **Notice of Appeal** was filed by the plaintiff with the Clerk of the Fourth Circuit on **October 24, 2023**, noted in the trial court docket at Dkt. 60 & Dkt. 60-1. I filed my matter, like over 1,100 other CLJA plaintiffs so far, at my Dkt. 1. The Court below never granted or denied *in forma pauperis* status that I requested at Dkt. 2. I have been granted this dozens of times over the years due to my Camp LeJeune disabilities and extreme poverty. But there was no objection to me proceeding at any time as though that status were granted. When I sought mandamus relief at 23-1120 back in February, this Court GRANTED *IFP* status in that case at Dkt. 4. I should be allowed to proceed *IFP* here again based on that same *IFP* GRANT in 23-1120. 28 U.S.C. § 1915. Also, I should be allowed to rely on the docket record below per F.R.A.P. Rules 24 & 24(c) without having to file an appendix with those documents. I request this. I include an *IFP* application in case it is needed as an attachment to this brief along with the offending District Court ORDER at Dkt. 59.

## II.   ISSUES FOR REVIEW

Whether the District Court "clearly erred" with its Dkt. 59 failure to make factual findings and "abused its discretion" as a matter of law in refusing injunctive relief in the form of health and education payments as a 0% interest loan from defendant United States to Plaintiff Straw to be repaid from any settlement or verdict under CLJA, SEC. 804(b), to mitigate the damages and "harms" of Straw's Camp LeJeune toxic water exposure, 1968-1970.

The factual background includes that the defendant by counsel asserted in its Answer's Affirmative Defense #13 (Dkt. 17) that Straw needed to **mitigate damages**, but opposed Straw having the health coverage payments to do so (Dkt. 16). Straw's graduate education loan benefit request is meant to remediate discrimination he has experienced.

Because no factual or legal grounds exist to refuse the relief and the ORDER at Dkt. 59 wholly fails to find facts or explain why relief for the toxic harm should not be provided as a matter of law, Dkt. 59 must be overturned and Dkt. 56's proposed order at Dkt. 56-2 should be granted as temporary health and education injunctive relief to address the harms of Straw's poisoning.

### III.  STATEMENT OF THE CASE:
### A. NATURE OF THE CASE

1. This lawsuit is for relief of harms under SEC. 804(b) of the Camp LeJeune Justice Act of 2022, Public Law 117-168. The ORDER denying the Dkt. 56 relief at Dkt. 59 refused to impose a 0% interest loan from the defendant United States to the plaintiff to mitigate the damage of his poisoning by providing $4,000 per month health payments for plaintiff's Home Health Aide, service dog, doctor(s), and medications plaintiff takes daily for the mental illnesses Camp LeJeune toxic exposure caused in him. That loan was to be repaid from plaintiff's damage award or any settlement later. Also included in the Dkt. 56 MOTION was loan money for graduate education to address discrimination and conflicts and restore his dignity. $2,400 per month was to be allocated for that purpose as a loan to be offset from the damage award or settlement.

2. Appellant's original **fully briefed** motion for health payments, Dkt. 9 with supporting documentation at Dkt. 9-1, was not denied with any reason specific to him but part of denying **without prejudice** *all pending motions* because of the consolidated case, *Camp Lejeune Water Litigation v. United States*, 7:23-cv-897 (E.D.N.C.), Dkt. 23, **p.6**. In that ORDER, plaintiffs are allowed to refile if the subject matter is individual to a single case and not "global." Such motions were to be restricted such that leave of the Court was required and good cause was demonstrated even when the original Dkt. 9 motion did not.

3. Dkt. 59 was an example of denying that leave despite good cause being demonstrated, as Dkt. 56 did. Dkt. 59 did not provide any actual reasons in the

ORDER, just a cursory statement that basically the judge had read the pleadings. That's not a reason for finding a lack of good cause. Any motion for injunction could be refused using that **failure to reason** and **failure to find and acknowledge facts**.

4.  This appeal is simply to overturn Dkt. 59 and find that there was good cause and grant the Dkt. 56 MOTION for health mitigation payments and educational benefits to alleviate past and present discrimination effects.

**III.STATEMENT OF THE CASE:**
**B. COURSE OF THE PROCEEDINGS**

5.  Appellant filed a USN JAG CLJA claim in August of 2022 (Dkt. 1-2, **p. 1**) and received a perfection letter (Dkt. 1-2, **pp. 2-3**). The CLJA claim number assigned was **CLS23-004519**. Appellant filed this action via U.S. Mail and his original complaint was docketed on **February 21, 2023**. Dkt. 1. Appellant Straw filed an amended complaint at Dkt. 25. After the consolidated case provided that a **short form complaint** be filed, Appellant did so and it is in the record below at Dkt. 55 on **October 5, 2023**. While answers with certain key admissions were entered at Dkt. 17 and Dkt. 27, no answer has been entered to oppose Appellant's Dkt. 55 short form complaint, which is only a few pages long, but no answer is required under the consolidated case management ORDER at Dkt. 23, **page 6**. There is a Master Complaint (Dkt. 25) the Leadership Counsel filed on **October 6, 2023**, in the consolidated case. The District Court has ORDERED in its Dkt. 23 consolidated case management order that an answer to the Master Complaint be filed with a deadline **45 days**

**after the Master Complaint was filed**, so that deadline is **November 20, 2023**, a Monday that is not a holiday in the United States. Given the intent of Congress to rapidly pay the victims after 70 years of failure of justice, I hope the DOJ attorneys do not file any answer but allow this matter to end in default. These victims have earned this result. I filed a variety of motions and supporting documents, but it was all swept aside without any individual consideration of my case in the consolidated case, Dkt. 23. Since the Leadership Counsel in the consolidated case have not filed any motion to ensure every victim gets screening for health problems and cancers and receives health care when illnesses are found, and education benefits to alleviate discrimination effects, I must seek this relief **individually**. Since no global motion has been made to address the immediate and ongoing discrimination that accompanies mental illnesses like mine, caused by Camp LeJeune toxins, education benefits must be requested individually, as I did here with my Dkt. 56 motion.

### III.STATEMENT OF THE CASE:
### C. HEARINGS

6. While there have been global hearings covering all the CLJA cases handled by Judge Boyle, I have attended exactly none thus far. I requested my motions to be done after briefing and on the papers, as is reasonable given I have no legal representation, am in poverty due to my Camp LeJeune disabilities, and live very far away in another country that is 12 time zones different from the District Court in North Carolina: The Philippines, Manila Time.

### III.STATEMENT OF THE CASE:
### D. MOTIONS

7. The only motion relevant to this appeal is the Dkt. 56 motion (Dkt. 56-2 proposed order) requesting health and education payments. This was denied at Dkt. 59 while the government opposed my original Dkt. 9 motion for health care (with supporting documents at Dkt. 9-1) at Dkt. 16, but the government in its first answer also wanted *me* to **mitigate the damage** at risk of losing my case. (Dkt. 17, **page 29**, Aff. Def. #13). Addressing my illnesses and preventing suicide or other increased damage with the **mitigating** health and education payments I seek is precisely the kind of mitigating acts that the government must be considered as demanding and thus the GOVERNMENT must pay for this, **not its victim**. I am not asking for a forced grant, but *a loan* to be repaid from my future damages, which are **not welfare**.

### III.STATEMENT OF THE CASE:
### E. APPEARANCES

8. *Plaintiff-appellant* is proceeding *pro se*.

9. *Defendant-appellee* has been proceeding by counsel from the U.S. Department of Justice. These include the following 5 attorneys: Mr. Haroon Anwar (Dkt. 5), Ms. Elizabeth Platt (Dkt. 6), Ms. Allison O'Leary (Dkt. 18), Ms. Cindy Hurt (Dkt. 37), and Mr. Patrick Ryan (Dkt. 38).

10. Since these attorneys appeared, there has been no objection to the Dkt. 2 requested *IFP* status, no objection to venue, and no objection to jurisdiction by the District Court in the Eastern District of North Carolina.

11. There has been no defendant challenge or objection in my lawsuit to the constitutionality of the Camp LeJeune Justice Act of 2022, Public Law 117-168.

### III. STATEMENT OF THE CASE:
### F. TRIAL

12. There has been no trial. However, the facts I stated in all my pleadings are true and justify relief under SEC. 804(b) because I was harmed by my Camp LeJeune toxic water exposure as fetus and infant.

### III. STATEMENT OF THE CASE:
### G. EXHIBITS/EVIDENCE

13. My evidence documents, especially Dkt. 9-1, show that I was present at Camp LeJeune and used it for 583 days with my mother and father, who was a U.S. Marine and stationed there from 12/19/1968 to 7/24/1970. My USN JAG CLJA perfection letter for claim **CLS23-004519** (**pages 18-19** of Dkt. 9-1) shows that I made a proper claim and thus was not denied by the Navy when it had the opportunity to do so. My birth certificate, Dkt. 9-1, **page 1**, shows I was born at Camp LeJeune Naval Hospital during the middle of the toxic time in 1969 and thus *I was there* in the middle of that NOT remediated Superfund site on the very first day of my life.

14. My mental and physical disabilities and the discrimination that accompanied them, all reasonably with roots in Camp LeJeune poisoning, were demonstrated with documentation and holdings in other federal lawsuits. These include exhibits in my case against LinkedIn (**Dkts. 22-1 to 22-58**) in the

Northern District of California and my cases in the Fourth Circuit against the State Department ([Dkt. 46](), **pages \*6-7**) and my case against CMS ([Dkt. 22](), **page 2**) for not providing my Medicare coverage overseas to me.

15. Thus, I have evidence in the record of this case and others that I was present for the requisite time, was injured in a variety of ways (See [Dkt. 58](), **FN2** and **pages 3-6**), and deserve protection and relief from "harm" under SEC. 804(b) of CLJA, <mark>now and ongoing</mark>.

16. There was no evidence or legal reason for denying me my motion at [Dkt. 56]().

### III. STATEMENT OF THE CASE:
### H. DISPOSITION BELOW

17. My fully briefed [Dkt. 9]() MOTION was denied in a global dismissal ORDER at [Dkt. 23]() of the consolidated case without considering *my facts* and *my legal arguments* for mitigating health relief payments.

18. In the absolute absence of any motion by the Leadership Counsel for health care or screening for the hundreds of thousands of poisoning victims and many [different health injuries]() likely from this poisoning, I had to seek these **health and education benefits** to mitigate the damage in my own case. I provided the reasons and evidence to justify it in [Dkt. 56](), was remarkably not opposed by the opposing counsel, and provided a well-reasoned proposed ORDER at [Dkt. 56-2](), but was denied without any finding of fact or logical legal reasoning at all by the presiding judge at [Dkt. 59]().

19. Moreover, my [Dkt. 19]() REPLY to the [Dkt. 16]() opposition to my [Dkt. 9]() MOTION for mitigating health payments provides ample *legal reasons* for the injunction.

## VI. STANDARD OF REVIEW

20. The standard of review for appellate consideration of a failure to provide an injunction is "abuse of discretion."

21. Given I am seeking **merely a loan** as mitigating relief for harm that is ongoing and will end and be repaid upon verdict or settlement, Dkt. 56 was seeking a preliminary injunction only to last temporarily to prevent and mitigate harm that is covered by CLJA, and thus providing this relief protects the interests of **both the plaintiff and the defendant** by reducing the amount of damage and avoiding even greater damage that the defendant would invariably have to compensate. *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 166 (2d Cir. 2001) (citing *SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79, 81 (2d Cir. 2000)).

22. The failure to make any finding of fact, as here, must fall under the **"clear error"** review standard. *Zervos* at **166** & **FN6**.

## VII. BACKGROUND & ARGUMENT

23. I am a Camp LeJeune poisoning victim, born in the Camp LeJeune Naval Hospital in 1969. This is already adjudicated. *Straw v. Wilkie*, 20-2090, 843 F. App'x 263, **265-267** (Fed. Cir. 1/15/2021).

24. My evidence at Dkt. 9-1 and supported by every filing I have made thus far show that **I was there** and thus **poisoned** as **a fetus** and as **an infant** son of a Camp LeJeune USMC veteran for **19 months**, with severe injuries to me, creating in me both physical and mental disabilities with which I have had to contend my entire life without help from the dishonest government that

imposed this on me while hiding and minimizing it, advancing unjust legal arguments in MDL-2218 against me and my family requiring Congress to act to overturn that result, and without paying to prevent or mitigate the harms it causes and is still causing from this source.

25. Both of my parents have had **cancer** or **tumors**, with my mother dying of hers that started in her breast. She died of her "breast cancer" after a humiliating mastectomy and draining chemo and radiation, such that it nevertheless spread to her spine and brain while I was in law school and killed her my 4th semester of Law School at IU-Maurer School of Law in 1997, while I was the Dean's research assistant. My U.S. Marine father is still alive but undergoing tumor surgeries to his head, torso, and limb even in the past few years. My daughter had scoliosis so severe that she needed a humiliating torso brace her entire childhood and required open spine surgery at the age of 13.

26. Camp LeJeune is the only common thread that links us all. My mother's estate's USN JAG CLJA claim is **CLS23-005185**. I am the administrator for her Estate.

27. In that *Straw v. Wilkie* case, I was denied the health coverage over my address off base when I used the base for 19 months while my father was stationed there. I am obviously at high risk of cancer but I have no health insurance and on $1,386 SSDI, I cannot afford to pay for screening or my other medical needs.

28. I pay for my medications and doctor visits in cash. I can't even pay my Home Health Aide or pay for my service dog to have regular vet visits.

29. It is a travesty of justice that Congress dangled health care in front of me and then a federal court in *Straw v. Wilkie* yanked it away over my sleeping address when I used the base during the day. An awful result, unfair and that may be killing me today because I have no health insurance.

30. A district court abuses its discretion when:

- District court does **not apply the correct law** or rests its decision on a **clearly erroneous finding of a material fact**. *See Jeff D. v. Otter*, 643 f.3d 278 (9th Cir. 2011) (citing *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th                              Cir.                              2004)).

- District court **rules in an irrational manner**. *See Chang v. United States*, 327 F.3d 911, 925 (9th Cir. 2003); *see also Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1084 (9th Cir. 2010) (concluding district court did not rule in an irrational                                                                              manner).

- District court makes **an error of law**. *See Koon v. United States*, 518 U.S. 81, 100 (1996); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1137 (9th Cir. 2011) (citing *Koon*); *Forest Grove School Dist. v. T.A.*, 523 F.3d 1078, 1085 (9th Cir. 2008) (applying *Koon*); *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002) (applying *Koon*). Thus, the court abuses its discretion by **erroneously interpreting a law**, *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1289 (9th Cir. 1994), or by resting its decision on an **inaccurate view of the law**, *Richard S. v. Dep't of Dev. Servs.*, 317 F.3d 1080, 1085-86 (9th Cir. 2003). *See also Fox v. Vice*, 131 S. Ct. 2205, 2211 (2011) (recognizing trial court has wide discretion "but **only when, it calls the game by the right rules**").

- **Record contains no evidence to support district court's decision**. *See Oregon Natural Res. Council v. Marsh*, 52 F.3d 1485, 1492 (9th                                        Cir.                                        1995).

31. Here, there were <mark>**no actual factual findings**</mark> whatsoever in the Dkt. 59 DENIAL. But there were facts supporting an injunction in the record, as noted above, especially at Dkt. 9-1 (showing presence) and the various documents noted above at ¶¶ 14 & 15.

17

32. Thus, on its face, the Dkt. 59 ORDER lacked the factual findings to overcome a "clearly erroneous" challenge. Moreover, the decision to not grant this relief is contrary to the defendant demand to **mitigate damages**. (Dkt. 17, Aff. Def. #13, **page 29**).

33. As a legal matter, Dkt. 19, **pages 7-19**, shows that there was no reasonable opposition to the issuance of a preliminary injunction for health care to avoid more damage.

34. Dkt. 56 merely **"relieves the harms"** (CLJA, SEC. 804(b)) that the facts show need be relieved in this case so the long list of Camp LeJeune-caused disabilities and mental illnesses do not result in <u>more damage or death</u>. Thus, health payments and education payments (to address discrimination's impacts) that are in the form of **0% interest loans** to be **offset from damages** that will be paid under these facts are <mark>reasonable and moderate in nature</mark>.

35. Such mitigating relief benefits both sides of the caption and cannot be opposed rationally by the presiding judge in an ORDER (Dkt. 59) that **lacks both factual findings** *and* **any rational reason** for denial.

36. If Medicare covered Appellant Plaintiff overseas or the Camp LeJeune Family Member Program (CLFMP) of the VA covered Plaintiff, *Straw v. Wilkie*, **FN1**, *infra*, for his Camp LeJeune injuries and health needs, this health part of the injunction would not be needed, but in the absence of Appellant-Plaintiff having ANY health coverage in the Philippines, this injunction is necessary.

Both of these major programs, Medicare and CLFMP (VA Health) have denied Plaintiff based on his **location (1968-1970 and 2018-2023), not injury**.

37. In Dkt. 59, there was a mere cursory and unsupported statement that there was not an adequate showing for leave to file a motion for individual relief. The injunction was for health care, cancer and other screening, and educational benefits in the form of **a mere loan** to be **repaid** from the damages that will clearly be granted later.

38. There was no acceptance in Dkt. 59 that Appellant was there at Camp LeJeune for over 30 days when **583 days** was the time span shown in Appellant's father's service record (Dkt. 9-1, pages 2-3) and of course the fact that **Appellant was born there in 1969**, as has also been adjudicated by the Federal Circuit.[1]

39. Appellant's presence for over 30 days as a fact is indisputable, as are the repeated admissions in the Answer at Dkt. 17 below that **PCE was in the water** when I found multiple www.Pubmed.gov medical studies showing PCE causes both **cancer** and the **6 mental illnesses** and conditions I have already diagnosed. (*See*, Dkts. 55, 56, 58)

40. With my mother having died of a cancer associated with the same PCE that damaged me, such female breast cancer in the Leadership Counsel FAQ, the ORDER at Dkt. 59 showed no respect for what happened to Appellant and his family and did not explain how the requested relief was not for mitigation when **it clearly is for mitigation purposes** and appropriate remediation purposes.

---

[1] *Straw v. Wilkie*, 32 Vet. App. 374, 375 (2020); *Straw v. Wilkie*, 20-2090, 843 F. App'x 263 (Fed. Cir. 1/15/2021)

19

41. The ORDER did not mention that the defendant ***asked me to mitigate*** as its **Affirmative Defense #13** in Dkt. 17 but *simultaneously* opposed me having screening and health care (Dkt. 16), thus requiring me to mitigate the damage the government caused *without* providing me the means to do it.

42. This attitude by the government that poisoned and injured the brains, spines, and Central Nervous Systems (CNS) of 3 generations of my family is contrary to the CLJA law, SEC. 804(b). What is required is **"relief for harm."**

43. This internally illogical set of requests and denials by the government was ***rewarded*** with denying me perfectly reasonable mitigating equitable relief, and thus the Dkt. 59 ORDER is both **illogical** *and* **hostile to a Camp LeJeune victim** without any stated reason or factual findings.

44. Dkt. 59 is contrary to the mandate in the CLJA to relieve the **"harm[s]."**

45. SEC. 804(b)'s language on its face supports my having immediate relief and prevention of further damage:

> (b) In General.—An individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to ==obtain appropriate relief for harm== that was caused by exposure to the water at Camp Lejeune.
>
> https://www.congress.gov/117/bills/s3373/BILLS-117s3373enr.xml#toc-H1974679CDA864491B1CB10D5F1E0BF71

46. There is absolutely nothing in CLJA to allow a District Court to refuse to address **immediate and ongoing harms** and needed prevention to **mitigate damage** when **decades of suffering have passed with federal courts wholly unsympathetic.** MDL-2218.

47. The District Court does not guarantee that the processing of 100,000+ claims and over 1,100 lawsuits under CLJA is going to happen quickly. Judge Dever has mentioned that the jury trial right at SEC. 804(d) could mean trying all these cases individually could take what he said would be **1,900 years**.

48. https://www.npr.org/2023/06/07/1180840816/four-judges-take-on-possibly-tens-of-thousands-of-lawsuits-over-camp-lejeune-wat

49. Justice and relieving these harms requires equitable relief, ongoing and right now, precisely as I have demanded.

50. Appropriate relief for ==harm== implies ==immediate prevention== and ==mitigation== of **further damage and medical treatment and interventions paid by the government that caused the damage**.

51. There was no evaluation or admission in Dkt. 59 of how my requested Dkt. 56 relief represented **mitigation of damages** that the government demanded at Dkt. 17 that I do.

52. The presiding judge has a history of hostility toward disability rights and has been repeatedly reversed by the Fourth Circuit.

53. https://indyweek.com/news/archives-news/raleigh-federal-judge-rebuked-fourth-circuit-disabilty-discrimination-

case/?fbclid=IwAR1UcTf5y99vDJYwq3ZH3fYeufbGXjBq9-jVj5dbZE79fxv2hRoudR6ev7Q

54. Civil Rights groups have opposed advancing Judge Boyle to the Fourth Circuit in part for his hostility to disability rights.

55. https://civilrights.org/resource/oppose-the-confirmation-of-terrence-boyle/?fbclid=IwAR0_wtQr5fU9F8J0qQ392DyC7diYmIek4dqIFJVZ-i0uBIvXi6s6-U-gqc4

56. This CLJA matter *is* a case about disability rights and damage from the government <mark>imposing disabilities on me</mark> from *in utero* forwards while working to ensure I have no relief. I too am claiming damage from a **state court former employer of mine** inflicting injury on me because I have these disabilities from Camp LeJeune. *Straw v. LinkedIn*, Dkts. 22-21, 22-22. Dkt. 57-4, 49-2, 58.

57. Dkt. 59 contains the same bad attitude behind it that Judge Boyle displayed in other disability rights cases, including that other case, *Jacobs,* where the plaintiff was a disabled court employee in North Carolina.[2]

58. If Judge Boyle cannot offer good services, fair and unbiased, he should recuse *sua sponte*.

59. If Judge Boyle is biased against disabled people, as his past work has apparently shown, such that civil rights groups opposed his advancement as a

---

[2] *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 31 A.D. Cas. 546 (4th Cir. 2015)

federal judge, perhaps the Fourth Circuit needs to preclude him from working on this, a much bigger and more important case.

60. Camp LeJeune Justice Act of 2022 was passed to alleviate tortious personal injury damage and wrongful deaths and disabilities imposed by an uncaring and callous government and its indifferent military. It is a miracle of legislation, unique in U.S. History.

61. The Court below had no right or power to deny relief meant to **"relieve the harms"** in the words of the very Act that the presiding judge is meant to enforce **vigorously**, not impede as he does in Dkt. 59.

## VIII. CONCLUSION

62. The ORDER at Dkt. 59 **abuses discretion** because it <mark>**fails to make any findings of fact**</mark> when the only pertinent facts in the record are in my favor. The Dkt. 59 denial <mark>**without reasoning**</mark> is directly hostile to the **legal mandate** to **provide relief for harms** under SEC. 804(b) of the Act for all victims like myself who have the evidence of exposure for enough time and injuries at least as likely as not caused by the Camp LeJeune toxic water. The District Court needs to stop denying reasonable relief from Camp LeJeune victims because if it will not, there will be a deluge of appeals also lasting 1,900 years after this justice has been delayed and denied for 70 years by a dishonest federal government and its military.

63. The Dkt. 59 DENIAL ORDER is an attempt to nickel and dime this poisoned USMC dependent when the <mark>**117,000+ CLJA claims**</mark> now amount to <mark>**$3.3 trillion**</mark>

23

(7:23-cv-897, Dkt. 34, **page 15**), as reported by Bloomberg Law. To say *I* should not have the health care and education I need amounting to just **$6,400 per month** with that massive tidal wave of legitimate claims, averaging **over $28 million each**, is just plain <mark>offensive</mark> and <mark>singles me out for injustice so I die waiting</mark>.

I, *pro se plaintiff* Andrew U. D. Straw, verify that the above factual contentions and statements are true and correct to the best of my knowledge, information, and belief, on penalty of perjury. Signed: **November 2, 2023**.

Respectfully,

s/ ANDREW U. D. STRAW
712 H ST NE, PMB 92403
Washington, D.C. 20002
Telephone: (847) 807-5237
andrew@andrewstraw.com

## RULE 30(d) STATEMENT

Pursuant to the Rules, *Appellant* Andrew U. D. Straw certifies that all material required are adequately represented in the docket below, which is the Record on Appeal here per Rule 24(c). No appendix is included, therefore.

Dated: **November 2, 2023**

Respectfully,

s/ ANDREW U. D. STRAW
*Appellant*

712 H ST NE PMB 92403
Washington, D.C. 20002
Telephone: (847) 807-5237
andrew@andrewstraw.com

## RULE 32 STATEMENT

This brief, excluding certificates and non-countable portions, is less than 30 pages. Countable portions are approximately **20 pages**.

Dated: **November 2, 2023**

Respectfully,

Andrew U. D. Straw
*Plaintiff-Appellant*

## PROOF OF SERVICE

The undersigned, *Appellant*, Andrew U. D. Straw, hereby certifies that on **November 2, 2023**, he filed with the Clerk of Court this **BRIEF**, with certificates via CM/ECF, with the ORDER OF DISMISSAL (Dkt. 59) also attached separately. It will be permanently available on www.Pacer.gov.

Dated: **November 2, 2023**

Respectfully,

Andrew U. D. Straw
*Appellant*

712 H ST NE PMB 92403
Washington, D.C. 20002
Telephone: (847) 807-5237
andrew@andrewstraw.com